UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Wiese USA, Inc.,                                      Case No.  3:17-cv-1967

                    Plaintiff,

          v.                                          MEMORANDUM OPINION
                                                           AND ORDER

Haulotte Group / Bil-Jax, Inc.,

                    Defendant.

## I.      INTRODUCTION

Plaintiff Wiese USA, Inc., seeks a declaratory judgment requiring Defendant Haulotte Group / Bil-Jax, Inc. ("Bil-Jax"), to indemnify and defend Wiese in three state-court lawsuits in Illinois arising out of an alleged accident involving one of Bil-Jax's products.  (Doc. No. 1).  I previously granted Bil-Jax summary judgment in its favor.  (Doc. No. 38).  Wiese appealed and the Sixth Circuit Court of Appeals reversed my ruling and remanded the case for further proceedings. *Wiese USA, Inc. v. Haulotte Grp. / Bil-Jax, Inc.*, 858 F. App'x 909 (6th Cir. 2021).

The parties have filed supplemental motions for summary judgment, (Doc. Nos. 45 and 46), and have completed briefing on the motions.  For the reasons stated below, I deny Wiese's motion and grant Bil-Jax's motion.

## II.      BACKGROUND

I previously summarized the factual and procedure posture of this case as follows:

Wiese and Bil-Jax, in some capacity, have had a business relationship dating back to early 2008.  (Doc. No. 24-1 at 13-15).  Bil-Jax designs and manufactures certain products for use in construction fields, including an aerial boom lift which allegedly

[is] the genesis of this litigation.  (Doc. No. 1 at 3).  Wiese contracts with manufacturers to be an authorized dealer of the products and equipment produced by those manufacturers.  (Doc. No. 22-1).

In 2012, Wiese and Bil-Jax negotiated an agreement, pursuant to which Wiese would stock, rent, and service Bil-Jax products within a given territory (the "Dealer Agreement").  (Doc. No. 1-1).  The Dealer Agreement included an indemnification provision, which states, in part, that Bil-Jax "shall indemnify and hold [Wiese] harmless against and assume the full responsibility for the defense and disposition of all claims or suits asserted against [Wiese] in which it is alleged that death, bodily injury[,] or property damage has been suffered as a result of an occurrence which is due in whole or in part from a producr (sic) defect caused by Haulotte Group / Bil[-]Jax in the design, manufacture, containerization[,] or identification of the Products . . . ."  (*Id.* at 7).

Wiese alleges that, in January 2016, a Bil-Jax aerial boom lift malfunctioned while in use by two employees of a roofing company, causing the employees to fall approximately 30 feet.  The roofing company, Sentry Roofing, Inc., had purchased the aerial boom lift from Airworx Construction and Equipment Supply, LLC, and had contracted with Wiese to inspect, maintain, repair, and service the aerial boom lift.  (Doc. No. 1 at 3).  Following the accident, Sentry and the two employees each filed suit against Airworx, Wiese, and Bil-Jax.  Bil-Jax refused Wiese's tender of defense for those lawsuits, leading to this litigation.

(Doc. No. 38 at 1-2).

I concluded the indemnity provision of the Dealer Agreement did not comply with Ohio's statute of frauds and that it therefore was unenforceable.  (*Id.* at 3-4).  Wiese appealed, and the Sixth Circuit ruled the statute of frauds does not apply to the indemnity provision because Ohio law permits courts to enforce a promise to indemnify made directly to the party incurring the debt – that is, a promise to indemnify made by Bil-Jax directly to Wiese – even if that promise is not in a signed writing.  *Wiese*, 858 F. App'x at 910-11 (citing cases).

## III.  STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's

favor.  *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).  A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV.   ANALYSIS

The parties have two primary disagreements: (1) whether the Dealer Agreement is an enforceable contract; and (2) if so, whether the indemnity provision applies in these circumstances.[1]

In the first instance, the Sixth Circuit's decision reversing my earlier summary judgment ruling precludes re-argument of Bil-Jax's position that the Dealer Agreement is not an enforceable contract.  This conclusion is driven by the application of three appellate principles.

The first two – the law of the case doctrine and the mandate rule – are related.  The law of the case doctrine "precludes a court from reconsideration of issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition."  *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citations and internal quotation marks omitted). "Pursuant to the law of the case doctrine, and the complementary mandate rule, upon remand the trial court is bound to proceed in accordance with the mandate and law of the case as established by the appellate court."  *Id.*  Once a case is remanded by the appellate court, "[t]he trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces."  *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citation and internal quotation marks omitted).

---

[1]  Wiese has abandoned its claim for common-law indemnity.  (Doc. No. 33 at 3, n.1; Doc. No. 48 at 1).

The Sixth Circuit first determined, as the parties conceded in their supplemental briefing, that the statute of frauds does not apply to the indemnity provision. *Wiese*, 858 F. App'x at 911. But the circumstances on appeal also included Bil-Jax's other arguments in support of its position that the Dealer Agreement, and consequently the indemnity provision, were unenforceable. (*See* Doc. No. 27-2; Doc. No. 34 at 6-10). A third appellate principle provides guidance on how to address these other arguments. The Sixth Circuit has routinely held it "'can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court.'" *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 877 (6th Cir. 2020) (quoting *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (per curiam)). Yet, the Sixth Circuit declined to accept those alternate arguments as a reason to affirm my decision granting summary judgment in Bil-Jax's favor.

Instead, the Sixth Circuit noted that, under Ohio law, "a promise to indemnify . . . made directly to the party incurring the debt" is enforceable without a writing, and held:

> Here, Haulotte and Wiese specifically negotiated the indemnity clause. Haulotte promised Wiese directly to indemnify it against losses for certain claims and suits. Haulotte made this promise to Wiese, not to Wiese's creditors.

*Wiese*, 858 F. App'x at 911.

The conclusion that the indemnity provision is an enforceable agreement is "either [an] explicit[] or . . . [a] necessary inference from the disposition" of the appeal. *Westside Mothers*, 454 F.3d at 538. Thus, Bil-Jax's arguments on remand that the indemnity provision is unenforceable are contrary to "both the letter and the spirit" of the Sixth Circuit's ruling. *Moored*, 38 F.3d at 1421.

Bil-Jax's second argument on remand – that the product in question is not within the scope of the indemnity provision – fares better. The indemnity provision states:

> "Bil-Jax shall indemnify and hold [Wiese] harmless against and assume the full responsibility for the defense and disposition of all claims or suits asserted against [Wiese] in which it is alleged that death, bodily injury[,] or property damage has been suffered as a result of an occurrence which is due in whole or in part from a producr

4

(sic) defect caused by Haulotte Group / Bil[-]Jax in the design, manufacture, containerization[,] or identification of the Products . . . ."

(Doc. No. 1-1 at 7).

The Dealer Agreement defines the term "the Products" as "Elective Scissor Lifts, Electric Self-Propelled Booms, Vertical Lifts . . . and all service parts for the same."  (*Id.* at 2).  The parties agree the product that led to the underlying injuries is a "trailer mounted articulating boom lift," which is not one of the three types of products included in the defined term.  (Doc. No. 27-3 at 3).

Wiese argues the parties did not intend to limit the Dealer Agreement to only "three random pieces of equipment," but expected the agreement to govern their "entire relationship" and to apply to "all Haulotte products."  (Doc. No. 46 at 14).  Wiese contends the Dealer Agreement is ambiguous because it "contains several instances of contradicting language regarding the coverage of the products" and, therefore, I may consider extrinsic evidence to resolve the ambiguity.  (Doc. No. 33 at 12).

It is true that the Dealer Agreement, in several different sections, contains a variety of terms referencing the machines and equipment which may be covered by the parties' agreement.  At various points, the Dealer Agreement uses the following language: "the Products"; "Haulotte product"; "Haulotte machines"; "Haulotte products"; "Haulotte Group / BilJax Products"; and "Products."  (Doc. No. 1-1 at 2, 3, and 6).

But that is not true for the indemnity provision.  "Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations."  *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio Ct. App. 1998) (citing *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991)).  A court's role is to determine whether "the relevant contract language is ambiguous."  *Potti*, 938 F.2d at 647; *see also id.* ("Ambiguity exists only when <u>a term</u>

cannot be determined from the four corners of the agreement . . . .") (citing *Wells v. Am. Elec. Power Co.*, 548 N.E.2d 995 (Ohio Ct. App. 1988)) (emphasis added).

Wiese argues that the inconsistent references to Haulotte and Bil-Jax products throughout the Dealer Agreement creates ambiguity as to the scope of the Dealer Agreement.  (Doc. No. 46 at 15 ("The Dealer Agreement contains many instances of contradicting and ambiguous language regarding the coverage of the products. . . . Thus, when reviewing the contract as a whole . . . the terms relating to Haulotte product are ambiguous . . . .).  But the indemnity provision does not contain inconsistent references and, therefore, that provision is not ambiguous.

"When a contract term is defined in the policy, that definition controls what the term means."  *Watkins v. Brown*, 646 N.E.2d 485, 487 (Ohio Ct. App. 1994); *see also Pica Corp. v. Clarendon Am. Ins. Co.*, 339 F. App'x 540, 541-42 (6th Cir. 2009) (quoting *Watkins*).  The indemnity provision uses the defined term – "the Products."  (*Id.* at 7).  Wiese does not suggest there is any ambiguity in the language used in the subsection defining the term "the Products."  Instead, Wiese contends the inconsistent usage of the defined term creates ambiguity as to whether the parties intended for the Dealer Agreement to cover only the products encompassed by the defined term.

But the fact that <u>other</u> provisions within the Dealer Agreement may be ambiguous does not mean the indemnity provision in that Agreement is ambiguous.  The parties' dispute is not over whether other products were subject to, for example, the price discount provision, or the provision governing Wiese's duties as an authorized dealer.  (*See* Doc. No. 1-1 at 1, 6).  Rather, the parties' dispute concerns the duties Bil-Jax owes to Wiese under the indemnity provision.  The relevant question is whether that specific provision is ambiguous.  Because it is not, I may not consider extrinsic evidence to determine if the parties intended the indemnity provision to mean something other than what the contractual language states.  *See, e.g., Potti*, 938 F.2d at 647-48 (concluding trial court erred by admitting extrinsic evidence of the parties' intent when "there [was] no ambiguity

with respect to the critical language" contained in the disputed "paragraph 8.2"); *United States Fid. & Guar. Co.*, 716 N.E.2d at 1209 (concluding trial court erred by considering extrinsic evidence to determine the parties' intent when there was no ambiguity in the defined term "losses").

I conclude: (i) there is no ambiguity in the contractual definition of "the Products"; (ii) the defined term controls the scope of Bil-Jax's promise to indemnify Wiese; and (iii) the indemnity provision does not apply in these circumstances.

## V. CONCLUSION

For the reasons stated above, I deny Wiese's supplemental motion for summary judgment, (Doc. No. 46), and grant Bil-Jax's supplemental motion for summary judgment, as to each of Wiese's declaratory judgment claims.  (Doc. No. 45).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge